JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Willie Grimes ("defendant"), appeals from the judgment entered pursuant to a jury verdict finding him guilty of misdemeanor assault and patient abuse. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} From approximately 1998[1] through November 11, 2004, defendant was employed as a mental health worker at Hanna Pavilion, a psychiatric hospital within the University Hospital System. His duties included assisting the nurses and doctors and taking care of the patients' needs.
 {¶ 3} On November 10, 2004, a patient by the name of K.C. was admitted to Hanna Pavilion. K.C. suffers from bipolar disorder and has been admitted to Hanna Pavilion on prior occasions. K.C. is known to be an aggressive and belligerent patient who is verbally abusive and uses profane language. She is a very large woman[2] and has been restrained by staff members on previous occasions. Upon her admission, K.C. was placed in the "stabilization unit" or "short hallway," which is for patients who are particularly agitated and irritable.
 {¶ 4} On the afternoon of November 11, 2004, defendant was assigned to the "long hallway," where the more stable patients are housed. K.C. entered the long hall and began throwing paper airplanes at the defendant. Defendant told K.C. to go back into the short hall but she ignored him and continued throwing airplanes at him. K.C. then pushed defendant on the shoulder. In full view of K.C.'s attending physician, defendant wrapped his arm around K.C.'s neck and flipped her to the floor, where he straddled her and began choking her. After several hospital personnel attempted to intervene and pull defendant off K.C., defendant eventually released his grip on K.C.'s neck. K.C. temporarily lost consciousness and sustained bruising on her neck as a result of this incident.
 {¶ 5} On January 4, 2005, the Cuyahoga County Grand Jury indicted defendant on one count of patient abuse in violation of R.C. 2903.34 and one count of felonious assault in violation of R.C. 2903.13.
 {¶ 6} On June 29, 2005, a jury trial began. The State first called K.C. who testified to the following: She was throwing paper airplanes at the defendant on November 11, 2004. He told her to stop but she ignored him and continued to throw paper airplanes at him. Defendant told her not to touch him. K.C. came up behind him and tapped him on the shoulder. Immediately after tapping him, defendant turned around, grabbed her around the neck, pushed her to the ground, straddled her, and started choking her.
 {¶ 7} Next, Agnes Blazunas ("Blazunas"), a registered nurse at Hanna Pavilion specializing in crisis prevention and management of agitated patients, testified to the following: She was K.C.'s assigned nurse on November 11, 2004. She overheard K.C. and defendant exchanging words in the long hall. She was concerned because defendant's tone of voice appeared hostile. She told K.C. to go back to the short hall. She went into her office and called the nursing manager to let her know about defendant's inappropriate behavior. Approximately two minutes later she heard a loud commotion in the hallway. She hung up on the nursing manager and ran into the hallway. She saw defendant straddling K.C. and choking her. Several staff people were standing around yelling and telling defendant to stop. Blazunas got onto her knees and began yelling at defendant to stop. When defendant did not stop, Blazunas started to push, tug, and punch him. The secretary at the desk hit the panic button and called protective services. After a few minutes, defendant released his grip on K.C. Blazunas admitted that K.C. is known to be a verbally, and sometimes physically, abusive patient and that she has physically restrained her on at least one previous occasion.
 {¶ 8} Next, Dr. Michael Carlisle ("Dr. Carlisle") testified to the following: He was K.C.'s attending physician on November 11, 2004. He heard shouting in the hallway and when he went onto the floor he saw defendant and K.C. facing each other in what appeared to be a fight with several staff members trying to separate them. Dr. Carlisle saw defendant put his right arm around the back of K.C.'s neck and forcefully slam her to the ground. Dr. Carlisle stated that he, as well as several other staff members, told defendant to let go of K.C. and that he tried to physically remove defendant's hands from K.C.'s neck. After several minutes, defendant released his grip on K.C. On cross-examination, Dr. Carlisle stated that he initially thought that defendant was trying to restrain K.C. However, he further stated that his opinion changed when defendant refused to release his grip on K.C.'s neck for several minutes.
 {¶ 9} Next, Detective James Shan ("Det. Shan") of the University Circle Police Department testified that he submitted the case to the Grand Jury after receiving an incident report and speaking with K.C., Blazanus, and Dr. Carlisle.
 {¶ 10} For the defense, Charles Hamilton testified. He is a registered nurse at Hanna Pavilion. He did not witness the incident but was assigned to care for K.C. the day after the incident. He stated that K.C. told him she "was going to get rich" from the incident.
 {¶ 11} Next, Gabriel Cespedes testified. He is a mental health worker at Hanna Pavilion. He did not witness the incident. He testified that defendant is a good worker and kind to the patients.
 {¶ 12} On July 8, 2005, defendant was found guilty of one count of patient abuse and the lesser included offense of misdemeanor assault. Defendant was sentenced to one year of community control. Defendant now appeals and raises five assignments of error for our review, which will be addressed together where appropriate.
 {¶ 13} "I. The court erred in denying appellant's Rule 29 motion on the charge of patient abuse when the State did not show that the hospital was a `care facility' and the verdict of guilty was therefore not supported by sufficient probative evidence.
 {¶ 14} "V. The court's decision finding the defendant guilty of patient abuse was not supported by sufficient evidence and was against the manifest weight of the evidence."
 {¶ 15} In these assignments of error, defendant argues that the State failed to present sufficient evidence to support his conviction for patient abuse and that his conviction for patient abuse is against the manifest weight of the evidence.
Sufficiency
 {¶ 16} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the State. State v.Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 17} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 18} Here, defendant was charged with patient abuse, which is defined by R.C. 2903.34 and provides, in pertinent part, that "no person * * * who is an * * * employee of a care facility shall (1) commit abuse against a resident or patient of the facility."
 {¶ 19} The term "care facility" is defined in R.C. 2903.33(A) to include any of the following:
 {¶ 20} "(1) Any `home' as defined in section 3721.10 or5111.20 of the Revised Code;
 {¶ 21} "(2) Any `residential facility' as defined in section5123.19 of the Revised Code;
 {¶ 22} "(3) Any institution or facility operated or provided by the department of mental health or by the department of mental retardation and developmental disabilities pursuant to sections5119.02 and 5123.03 of the Revised Code;
 {¶ 23} "(4) Any `residential facility' as defined in section5119.22 of the Revised Code;
 {¶ 24} "(5) Any unit of any hospital, as defined in section3701.01 of the Revised Code, that provides the same services as a nursing home, as defined in section 3721.01 of the Revised Code;
 {¶ 25} "(6) Any institution, residence, or facility that provides, for a period of more than twenty-four hours, whether for a consideration or not, accommodations to one individual or two unrelated individuals who are dependent upon the services of others;
 {¶ 26} "(7) Any `adult care facility' as defined in section3722.01 of the Revised Code;
 {¶ 27} "(8) Any adult foster home certified by the department of aging or its designee under section 173.36 of the Revised Code;
 {¶ 28} "(9) Any `community alternative home' as defined in section 3724.01 of the Revised Code."
 {¶ 29} "Abuse" is defined in R.C. 2903.33(B) as "knowingly causing physical harm or recklessly causing serious physical harm to a person by physical contact with the person or by the inappropriate use of a physical or chemical restraint, medication, or isolation on the person."
 {¶ 30} Defendant first argues that there is insufficient evidence to convict him of patient abuse because University Hospitals is not a patient "care facility" as defined in the statute. Focusing on R.C. 2903.33(A)(5), defendant argues that Hanna Pavilion does not provide "personal care services" to "residents" who do not need "skilled nursing care." Defendant argues that since he was employed by a hospital and not a "care facility," R.C. 2903.34 cannot be applied to him.
 {¶ 31} Construing the testimony in a light most favorable to the State, as we are required to do, it is clear there was sufficient evidence which demonstrated that Hanna Pavilion, into which K.C. was admitted for treatment, is a psychiatric care facility. There is evidence in the record to suggest that K.C. was involuntarily admitted into Hanna Pavilion. Involuntarily commitment patients, such as K.C., are admitted for extended periods of time and may not simply sign themselves out. Involuntary commitment patients, such as K.C., are dependent for their care during their commitment "upon the services of others." This clearly falls within the definition contained in R.C.2903.33(A)(6). Therefore, the trial court properly denied defendant's motion for acquittal on this ground.
 {¶ 32} Next, defendant argues that there is insufficient evidence to convict him of patient abuse because he did not use "inappropriate restraint" as defined in the statute. Specifically, defendant claims that K.C. was an intimidating and physically aggressive patient who was baiting him on the day of the incident by throwing things at him and then coming up behind him and pushing him in the back. He claims that he used appropriate physical restraint procedures, with the assistance of other staff, and took her to the ground.
 {¶ 33} At trial, K.C. testified that the defendant grabbed her around the neck, pushed her to the ground, straddled her, and started choking her. Nurse Blazunas testified that she heard the defendant talking to K.C. in a hostile tone of voice and shortly thereafter saw him straddling K.C. and choking her. Finally, Dr. Carlisle testified that he saw defendant slam K.C. to the floor and choke her. Both Dr. Carlisle and Nurse Blazunas testified that they were shouting and pushing at defendant for several minutes before he finally released his grip on K.C.'s neck.
 {¶ 34} Construing this testimony in a light most favorable to the State, as we are required to do, there was sufficient evidence which demonstrated that defendant used inappropriate physical restraint on K.C. and knowingly caused physical harm to her. Therefore, the trial court properly denied defendant's motion for acquittal on this ground.
 {¶ 35} In sum, there was sufficient evidence which, if believed, demonstrated that defendant engaged in the act of patient abuse as defined by R.C. 2903.34. Accordingly, this Court concludes that any rational trier of fact could have found the essential elements of patient abuse proven beyond a reasonable doubt. Defendant's arguments to the contrary must fail.
Manifest Weight
 {¶ 36} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins, supra at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 37} Here, the jury heard K.C. identify the defendant as the person who abused her on November 11, 2004. Specifically, K.C. described how defendant grabbed her around the neck, pushed her to the ground, straddled her, and started choking her. The jury heard Dr. Carlisle testify that he saw defendant slam K.C. to the floor and choke her. The jury heard Nurse Blazunas testify that she saw the defendant straddling K.C. and choking her. The jury also heard both Dr. Carlisle and Nurse Blazunas testify that they were shouting and pushing at defendant for several minutes before he finally released his grip on K.C.'s neck. Under these circumstances, we conclude that the same facts that overcame a sufficiency of the evidence claim also overcome his manifest weight argument.
 {¶ 38} Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in finding defendant guilty of patient abuse. We find substantial, competent, and credible evidence upon which the jury could base its decision that defendant knowingly caused physical harm against a patient.
 {¶ 39} Defendant's first and fifth assignments of error are overruled.
 {¶ 40} "II. The trial court committed prejudicial error in denying appellant's motion to charge the jury on attempted patient abuse."
 {¶ 41} In the second assignment of error, defendant argues that the trial court erred by failing to instruct the jury on the lesser included offense of "attempted" patient abuse. We disagree.
 {¶ 42} The record indicates that although defendant requested an instruction on a lesser included offense, he did not object to the trial court's failure to give an instruction on a lesser included offense. Crim.R. 30(A) provides, in pertinent part: "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." The failure to object to a jury instruction constitutes a waiver and any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise. State v.Underwood (1983), 3 Ohio St.3d 12.
 {¶ 43} A trial court's instructions to the jury should address the actual issues in the case as warranted by the evidence and the pleadings. State v. Brown (Feb. 29, 1996), Cuyahoga App. No. 68761, citing State v. Guster (1981),66 Ohio St.2d 266, 271. There must be some evidence presented at trial, on the issue, to warrant an instruction. State v. Thomas
(1988), 40 Ohio St.3d 213. Here, defendant was charged, and found guilty of patient abuse in violation of R.C. 2903.34, which provides, in pertinent part that: "no person * * * who is an * * * employee of a care facility shall knowingly cause physical harm or recklessly cause serious physical harm * * * to a person by physical contact with the person or by the inappropriate use of a physical or chemical restraint * * * on the person."
 {¶ 44} Physical harm occurs when there is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). There is no requirement that pain must be demonstrated by an outward physical manifestation in order to constitute physical harm. See State v.Lohr, Lorain App. No. 03CA008265, 2004-Ohio-1609; State v.Perkins (Mar. 27, 1998), Portage App. No. 96-P-0221 (any act, even a slap that invokes a grimace, can constitute physical harm); Dayton v. Hadley (June 2, 1986), Montgomery App. No. 9509, citing Legislative Service Note to R.C. 2901.01 (stating that precedent trauma is not a requirement to a finding of physical harm). Furthermore, "when there is no tangible, physical injury such as a bruise or cut, it becomes the province of the [trier of fact] to determine whether, under the circumstances, the victim was physically injured, after reviewing all of the evidence surrounding the event." Perkins, supra.
 {¶ 45} Here, three witnesses testified that the defendant slammed K.C. to the floor and choked her. The victim, K.C., testified that she lost consciousness for several minutes and sustained bruising on her neck. Defendant's argument that he was entitled to an instruction on the lesser included offense because K.C. did not sustain "serious" physical harm is simply not supported by the record. Moreover, as previously stated, "serious" harm is not required. See Id. Accordingly, there was no evidence presented that would have required the trial court to give an instruction on the lesser included offense of attempted patient abuse.
 {¶ 46} Defendant's second assignment of error is overruled.
 {¶ 47} "III. The trial court erred in denying the defense motion to redact the hearsay testimony contained in the medical records in violation of appellant's right to confront witnesses."
 {¶ 48} In defendant's third assignment of error, he maintains it was error to admit K.C.'s medical records, which contained unredacted hearsay statements by Dr. Carlisle and Nurse Blazanus. Defendant contends these prejudicial statements violated his rights to due process and confrontation of witnesses. Specifically, defendant cites to and relies upon Crawford v.Washington (2004), 541 U.S. 36, which holds that out-of-court testimonial statements may not be offered against the accused.
 {¶ 49} Defendant's reliance on Crawford is misplaced for a number of reasons. Unlike in Crawford, there is no indication in this case that the information contained in the medical records was testimonial in nature. Rather, the notes were made for purposes of medical diagnosis as provided in Evid.R. 803(4). Next, both of the witnesses who wrote the statements appeared and testified at defendant's trial. Thus, defendant had the opportunity to cross-examine Dr. Carlisle and Nurse Blazanus with respect to the statements they made. Indeed, the record reflects he did so. Accordingly, the trial court did not err in admitting K.C.'s medical records.
 {¶ 50} Defendant's third assignment of error is overruled.
 {¶ 51} "IV. The trial court erred in denying appellant's motion to dismiss count one of the indictment for failure to plead with specificity and provide appellant with adequate notice of the charges."
 {¶ 52} In his fourth assignment of error, defendant argues that the State failed to inform him via the bill of particulars of the specific nature of the criminal conduct with which he was charged. Specifically, defendant argues that the bill of particulars only stated he "committed abuse" against K.C. and thus he was "unfairly blind-sided" at trial when the witnesses testified that he choked her.
 {¶ 53} R.C. 2941.07 provides that upon a request for a bill of particulars, "the prosecuting attorney shall furnish a bill of particulars setting up specifically the nature of the offense charged and the conduct of the defendant which is alleged to constitute the offense." A bill of particulars is not designed to provide the accused with specifications of evidence or serve as a substitute for discovery. State v. Sellards (1985),17 Ohio St.3d 169, citing State v. Halleck (1970), 24 Ohio App.2d 74
and State v. Dinsio (1964), 4 Ohio App.2d 309.
 {¶ 54} Here, we do not find that the State's failure to specifically state that defendant choked K.C. prejudiced defendant's ability to fairly defend himself. Five pretrial discussions were held in this case.[3] At no time during these meetings did defense counsel raise this issue with the State. Moreover, in a journal entry dated June 3, 2005, the trial court noted that "defendant verifie[d] that all discovery [was] complete and case [was] ready for trial." Only when the case was called for trial on June 29, 2005 did defendant raise the issue of the inadequacy of the bill of particulars. Under these circumstances, the trial court reasonably determined that defendant waived the issue, since he had the opportunity to present his challenge during the discovery phase and was adequately verbally informed of the conduct the State intended to prosecute.
 {¶ 55} In sum, we find that defendant was aware of the charges against him and was not deprived of any due process rights.
 {¶ 56} Defendant's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kenneth A. Rocco, J., and Christine T. McMonagle, J., concur.
[1] Tr. 461.
[2] K.C. is approximately 5' 9" tall and weighs between 300 and 350 pounds.
[3] February 15, 2005, March 7, 2005, March 29, 2005, April 12, 2005 and June 1, 2005.